IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUGENE MICHAUX | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 08-202 (JBS/AMD) |
| v. | **OPINION** |
| BAYER CORPORATION, et al., | |
| Defendants. | |

APPEARANCES:

Bruce D. Zeidman, Esq.
COFSKY & ZEIDMAN, LLC
209 Haddon Avenue
Haddonfield, NJ 08033
     Counsel for Plaintiff

Leslie A. Hayes, Esq.
ECKERT SEAMANS CHERIN & MELLOTT, LLC
Two Liberty Place
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102
     Counsel for Defendants

**SIMANDLE**, District Judge:

I.  **INTRODUCTION**

     This Court is asked to assess whether Defendants made an
arbitrary and capricious determination with respect to whether
Plaintiff was entitled to long-term disability benefits under his
employee benefit plan.  This matter is before the Court on
Defendants' motion for summary judgment [Docket Item 12].  For
the reasons explained below, the motion will be granted.

## II.  BACKGROUND

### A.  Plaintiff's Initial ERISA Complaint

In June 2005, Plaintiff filed a complaint with this Court alleging that Defendants violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a) by denying Plaintiff long-term disability (LTD) benefits.  See Michaux v. Bayer Corp. ("Michaux I"), 05-CV-1430, 2006 WL 1843123, at *4 (D.N.J. June 30, 2006).[1]

Plaintiff went on a leave of absence from his job as a plant engineer in August 2003, claiming that he was unable to perform his duties due to severe knee pain.  Plaintiff was granted short-term disability pay under Bayer's disability plan and applied for LTD benefits on January 19, 2004.  In his application, Plaintiff attributed his disability to left knee and back pain.

Under Bayer's LTD plan, a claimant must prove that he or she is "totally disabled" in order to be eligible for benefits.  The term "totally disabled" is defined, for purposes of long-term disability, as being "unable to perform the essential duties of your regular occupation" for the six months of LTD eligibility and then "unable to work at any job for which you are or could become qualified by education, training or experience for any

---

[1]  This Court's opinion in Michaux I sets out the relevant facts of Plaintiff's LTD claim in some detail, including the LTD application process and ultimate denial.  Id. at *1-4.  The facts discussed below are merely a summary of the facts presented in that first case.

period after the first six months of LTD eligibility."[2]  The Plan Administrator has discretion to make final determinations as to any facts necessary or appropriate for any purpose under the Plan, to interpret the terms and provisions of the Plans and to determine any and all questions arising under the Plans.

The initial LTD application was denied.  Although Plaintiff offered some supporting medical opinion as to his limitations, the Review Committee credited the medical opinion of an independent doctor who disagreed with the conclusions of Plaintiff's doctors.  Some time after the initial denial, Plaintiff was granted Social Security Disability Insurance (SSDI) benefits upon the Social Security Administration's determination that he was totally disabled.  Plaintiff appealed his LTD denial to Bayer's ERISA Review Committee, which upheld the denial of benefits.

Reviewing the record in June 2006, this Court ruled that it could not determine whether the decision to deny Plaintiff LTD benefits on appeal was arbitrary and capricious, noting that Defendants' ERISA Review Committee failed to consider evidence related to Plaintiff's favorable determination by the Social Security Administration that he was totally disabled, and failed

---

[2]  The opinion in <u>Michaux I</u> inadvertently misstated this definition, which can be found in a copy of the LTD plan originally submitted by Defendants' in their summary judgment motion in <u>Michaux I</u> attached to the Declaration of Susan W. Murphy.  (<u>Michaux I</u> Murphy Decl., Ex-A, at 42.)

to have one of its reviewing physicians perform a physical examination of Plaintiff even after two of its reviewing physicians recommended such an examination be performed and Plaintiff's treating physicians had found disabling pain.  The Court remanded the case back to Defendants' ERISA Review Committee for further administrative review and determination including examination of the Social Security records and either a physical examination or an explanation for why such an examination was not needed.

### B.  Plaintiff's Renewed ERISA Complaint

Upon remand, the Review Committee considered, along with the previous record: the information provided in Plaintiff's SSDI file; a report of a Dr. Steven Knezevich, an orthopedic surgeon who performed an independent medical evaluation (IME) of Plaintiff; a surveillance report from an investigative firm that followed Plaintiff, occasionally videotaping him; and a report from Plaintiff's chiropractor, Susan Welsh.  (Joint App'x, Ex-A, at 2.)

Regarding the SSDI determination, the Review Committee examined and disagreed with the determination, finding that "the SSDI records . . . do not support the conclusion of the agency, and certainly do not persuade the Committee."  (Id. at 5.)  The Review Committee concluded that the only new medical evidence presented for the determination of SSDI that was not considered

4

by the Review Committee previously — a medical examination performed by Dr. Tim Pinsky — did not support the Social Security Administration's determination.  (Id. at 3.)  Dr. Pinsky's report observed that there was "a paucity of objective diagnostic studies to substantiate [Plaintiff's] subjective complaints" and that "calluses on the palmar surface of each hand belie the fact that he has remained out of work for nearly a year.  This may reflect his continued boating activities, during which he also experiences low back pain."  (Id. at 3.)

The Review Committee also considered the report of Dr. Knezevich, who reviewed the complete medical file including Dr. Pinsky's report and examined Plaintiff.  Dr. Knezevich noted that Plaintiff's "self-reported level of pain is not supported by the results of diagnostic studies and documented physical examinations," concluding that he saw "no reason to place restrictions or limitations on this particular individual."  (Joint App'x, Ex-B, at 11.)  The Committee determined that this IME report was more detailed and reliable than the report provided by Susan Welsh.

Finally, the Review Committee noted that its assessment was "bolstered by the observations of the investigator who conducted surveillance" on Plaintiff.  (Joint App'x, Ex-A, at 5.)  The surveillance was initiated because of Dr. Pinsky's observations that Plaintiff continued boating and had heavy calluses on his

hands.  (Id.)  The Review Committee concluded that the observations of Plaintiff walking normally and then beginning to limp noticeably before a medical evaluation underscored the observations of possible "symptom magnification" in the IME report.  (Id.; Joint App'x, Ex-B, at 11.)

Based on the lack of persuasiveness of the SSDI record, the results of the IME, and the evidence of Plaintiff's activities in the videotaped surveillance, the Plan Administrator again denied Plaintiff's claim.  (Joint App'x, Ex-A, at 5.)

Plaintiff brought this complaint on January 11, 2008, renewing his argument that Defendants' decision was arbitrary and capricious.  Plaintiff now argues that the Committee disregarded parts of the record in the SSDI determination and that the Plan Administrator improperly relied on the allegations of boating activities and the surveillance evidence.

III. DISCUSSION

A.  Standard of Review

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the non-moving party." <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. <u>See</u> <u>id.</u>

This Court previously determined that the proper standard of review in this action is whether the Plan Administrator's decision was arbitrary and capricious. <u>See</u> <u>Michaux v. Bayer</u> <u>Corp.</u>, 05-CV-1430, 2006 WL 1843123, at *1 (D.N.J. June 30, 2006). Under the arbitrary and capricious standard, a district court may overturn a plan administrator's decision "only if it is 'without reason, unsupported by the evidence or erroneous as a matter of law.'" <u>Mitchell v. Eastman Kodak Co.</u>, 113 F.3d 433, 439 (3d Cir. 1997) (quoting <u>Abnathya v Hoffman LaRoche, Inc.</u>, 2 F.3d 40, 45 (3d Cir. 1993)). The district court "is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." <u>Id.</u> (internal citations and quotations omitted).

Therefore, in order to grant Defendants summary judgment in this case, the Court must find that there are no genuine of issues of material fact with respect to whether the Plan Administrator's decision was arbitrary and capricious and that given the undisputed evidence no reasonable jury could conclude that the plan administrator's decision was "without reason," or "unsupported by the evidence." <u>Id.</u> (internal citations and

quotations omitted).

**B.   Consideration of the SSDI Determination**

Plaintiff claims Defendants disregarded the substantive contents of Dr. Pinksy's report, including "findings of specific exertional and postural limitations." (Pl.'s Br. Opp. Summ. J., 6).

In fact, what Plaintiff mistakenly identifies as Dr. Pinsky's report is a form found in the Social Security file titled "Physical Residual Functional Capacity Assessment," an assessment apparently performed by an unknown "medical consultant" as part of Plaintiff's SSDI application.[3]  The form indicates an "exertional limitation" involving the inability to stand for longer than four hours even with normal breaks. (Joint App'x, Ex-B, at 92.)

It is not clear what this assessment is based on, as Dr. Pinsky's report does not indicate such a restriction.  More importantly, Plaintiff offers no evidence that the Committee disregarded this report, as opposed to simply choosing not to credit it over the contradictory IME report.

Plaintiff claims further that, unlike Defendant's

---

[3]  The form is signed, and the illegible signature appears to match the signature of a doctor on a Social Security medical review referral form, but no name is given on either form. (Joint App'x, at 64).

8

physicians, the Social Security Administration had a DOT description of Plaintiff's job which described it in terms of physical requirements, lending greater weight to the credibility of the Administration's determination that Plaintiff was disabled.  (Id. at 8.)

At most, consideration of the requirements of Plaintiff's former job would be relevant to a determination that Plaintiff was "unable to perform the essential duties" of his former job. It is irrelevant to whether Plaintiff is "unable to work at any job for which [he is] or could become qualified by education, training or experience," the standard for "total disability" after six months under the Plan, especially given that the Review Committee's decision was based on the IME report's finding that no restrictions at all were indicated.

The record demonstrates that the information in the SSDI records was considered by both the physician performing the IME and the Review Committee.  While Plaintiff may object to the decision to weigh the IME more heavily than the SSDI determination, objection to the ultimate weight given to evidence is without merit in the determination of whether a decision was arbitrary and capricious.  The Committee relied upon the IME's well-supported conclusion that there was "no reason to place restrictions or limitations on this particular individual."  (Joint App'x, Ex-A, at 5.)  The Court agrees with

Defendants that the deferential standard of review means anything, it means that it is the function of the plan administrator, and not the courts, to decide which of the conflicting reports is the more credible.  See Leahy v. Raytheon Company, 315 F.3d 11, 19 (1st Cir. 2003).


**C.  Reliance on Allegations of Boating**

Plaintiff argues that Defendant's references to boating activities indicate an arbitrary and capricious decision, because there is no indication of what boating activities Plaintiff engaged in (if any) or why they would be inconsistent with the disability described by his physicians.  (Pl.'s Br. Opp. Summ. J., 10-11).  Plaintiff also objects to the Review Committee's consideration of the surveillance report when the Committee appears not to have reviewed the video themselves and did not have a doctor review the video, but instead relied on an unknown private party's questionable narrative of the events in the video to form their own lay conclusions.  (Id.)

The Court could be persuaded that exclusive or substantial reliance upon the surveillance report would be arbitrary and capricious.  The report does seem to editorialize on the contents of the video, which when objectively represented is hardly conclusive as to Plaintiff's relevant abilities.  But the Review Committee found only that the surveillance merely

10

"bolstered" its conclusions about the credibility of the IME report.  (Joint App'x, Ex-A, at 5.)  Reliance upon the narrative presented in the surveillance report as one among several reasons to make a credibility determination is not so unreasonable as to allow the Court to conclude that the Committee's decision to credit the IME report was "without reason" or "unsupported by evidence."  Mitchell, 113 F.3d at 439.  On the contrary, the Review Committee provides several reasons for crediting it, one of which happens to be the Committee's judgment that the video demonstrated Plaintiff's exaggeration of his symptoms.  The IME report is lengthy, detailed, carefully explained, and has the virtue of examining the totality of the relevant physical evidence and medical history.  It simply was not arbitrary and capricious to, having considered the counter-evidence, ultimately rely upon the IME report.

## IV. CONCLUSION

     For the reasons discussed above, the Court will grant Defendants' motion for summary judgment.  The accompanying Order is entered.


__December 16, 2009__                     __ s/ Jerome B. Simandle__
Date                                      JEROME B. SIMANDLE
                                          United States District Judge